UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GEORGIA CLASSIE,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   C.A. No. 20-cv-493-MSM-PAS |
| PAUL DOUCETTE, et al.,<br>    Defendants. | :<br>:<br>: |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is the motion of Plaintiff Georgia Glassie for leave to file her First Amended Complaint and Jury Demand ("FAC"). ECF No. 89; see ECF Nos. 89-1, 89-2. The motion has been referred to me. Having carefully reviewed it and the proposed FAC, as well as Defendants' arguments in opposition, I find that the amendment should be denied because Plaintiff has failed to demonstrate good cause for her delay in moving to amend, as well as because the amendment would cause prejudice. Mindful that this determination potentially forecloses further litigation of the "new" claims presented in the FAC, making it appropriate for d*e novo* review, I am presenting my determination by report and recommendation. Summer Infant (USA), Inc. v. Tomy Int'l, Inc., No. 1:17-cv-549-MSM-PAS, 2020 WL 4437259, at *1 (D.R.I. Aug. 3, 2020).

**I.    Standard of Review**

Requests for leave to amend are normally evaluated under Fed. R. Civ. P. 15(a)'s leave freely given standard; however, when, as is this case, leave is requested "in derogation of a scheduling order . . . Rule 16(b)'s more stringent good cause standard takes precedence." United States, ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 194 (1st Cir. 2015). The Rule 16 good

cause standard focuses on the "diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." Somascan, Inc. v. Phillips Medical Systems Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013).  Under this standard, the moving party must demonstrate "good cause" for not seeking leave to amend earlier.  In re Loestrin 24 FE Antitrust Litig., No. 1:13-MD-2472-WES-PAS, 2018 WL 11326011, at *2 (D.R.I. Dec. 14, 2018).  The "longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay . . . is itself a sufficient reason for the court to withhold permission to amend."  Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).  If a plaintiff demonstrates good cause, the court will then "apply the standard set forth in Rule 15(a) to determine whether a plaintiff's amendment would cause undue delay, was brought in bad faith, or with a dilatory motive, or if the amendment would be futile."  In re Loestrin 24, 2018 WL 11326011, at *2 (internal quotation marks omitted).

**II.    Analysis**

There are problems with Plaintiff's FAC that present serious concerns for the Court.  First, Plaintiff provides no explanation or excuse – never mind the "good cause" that is her burden pursuant to Rule 16(b) – for utterly disregarding the Court's Pretrial Order, which set April 10, 2023, as the deadline for amendments to the pleadings.[1]  See ECF No. 46.  Second, Plaintiff effectively admits in the memorandum supporting her motion, and Defendants persuasively assert in their oppositions, that little of what is now being presented as "new" really is new in that Plaintiff has long been aware, for years as to most, of the factual underpinnings of

---

[1] Notably, the Court has granted four motions that Plaintiff initiated or joined to extend the scheduling order deadlines, yet Plaintiff never sought to adjust the deadline for amending the pleadings.  ECF Nos. 56, 64, 68, 83.

virtually everything that she now presents as "new."[2]  Third, Plaintiff disingenuously asserts that Defendants already know about their accused conduct; therefore, she illogically contends they will not be prejudiced by an amendment to the pleadings at this late stage of this case, with fact discovery set to close on September 9, 2024, and the Court having already advised that it "is disinclined to grant further continuances of this schedule without a showing of good cause as required by Rule 16(b)(4) of the Federal Rules of Civil Procedure."  Text Orders of Feb. 20, 2024, June 5, 2024.  Fourth, as Defendants point out, the new material in the FAC is a dense hodge-podge of detailed new facts – approximately 120 new paragraphs – scattered throughout the pleading, making enormously burdensome the task of responding to each new allegation with an answer that admits or denies, or a motion that presents appropriate legal arguments, particularly with the close of fact discovery imminent.  See Peabody v. Griggs, C.A. No. 08-243-ML, 2009 WL 3200686, at *10-11 (D.R.I. Oct. 6, 2009) (dismissing amended complaint that added "mash of allegations" that will cause defendants "to expend significant and unnecessary effort to separate the wheat from the chaff in order to draft a reasoned response") (internal quotation marks omitted).  Fifth, the proposed FAC revives the Court's concerns about effectively conducting a parallel probate proceeding, cabined of course by the First Circuit's holding that this case may proceed because it is not an attempt to relitigate issues determined by the Probate Court but rather is a case to allow Plaintiff to air her claims that Defendants breached duties owed to her as managers of Historic Inns, that a RICO enterprise existed, and that Defendants committed bank fraud.  Glassie v. Doucette, 55 F.4th 58, 64 (1st Cir. 2022).  Yet

---

[2] Thus, Plaintiff's memorandum in support of her motion to amend recites the dates when she alleges she learned of the facts that she now seeks to add.  This reveals that they are not new; rather, most of them were discovered at times ranging from 2021 to January 2024.  ECF No. 89-3 at 5, 7, 8, 9, 10, 11.  Of the two alleged to have been discovered sometime in 2024, ECF No. 89-3 at 8, 10, Defendant Doucette persuasively points out that these "new" facts rely on a factual foundation that has long been knowable through the ongoing probate proceedings.

3

many of the "new" allegations amount to retooled arguments and objections Plaintiff made in the Probate Court, which issued its adverse-to-Plaintiff decision on December 29, 2023 (now on appeal to the Superior Court). For example, the FAC seeks to relitigate the Probate Court's inventory finding, including the Probate Court's consideration of the IRS Form 706 information. To that extent, the FAC poses serious concerns about this Court's second guessing an ongoing state proceeding.

Defendant Thomas Glassie adds to these concerns his contention that a significant set of the new claims (regarding the National Hotel Corporation and Yankee Development Corporation) are not only not new but are based on facts that were aired with Plaintiff, for example, in 2021 and are now presented so misleadingly as to transgress Fed. R. Civ. P. 11. See ECF No. 95. And Defendant Taft points out that the FAC accuses him of participating in mail fraud yet contains not one fact directed at him. See ECF No. 94. With the looming close of fact discovery on September 9, 2024, exacerbated by Plaintiff's breach of the Court's Order requiring answers to Defendant Taft's interrogatories, it is clear that the FAC will inflict serious prejudice on Defendant Taft in that he will be unable to defend himself from so serious a charge.

To illustrate the Court's concern regarding the scope of the task of plowing through each new allegation in this sixty-three-page pleading to test whether it is futile and why Plaintiff delayed until now to assert it, I focus on one set of just two proposed new paragraphs (¶¶ 208-09 in the track changes version) buried on page 56 of the proposed FAC. ECF No. 89-1 at 57. In these two paragraphs, Plaintiff asserts the "new" claim that "Defendants" engaged in the serious crime of conspiring to commit witness intimidation to induce Plaintiff to withhold testimony in violation of 18 U.S.C. § 1512(b). This crime is alleged to be a racketeering predicate crime in furtherance of an enterprise to defraud Plaintiff.

4

These two paragraphs raise the issue of futility in that the principal factual basis for the new claim of the commission of a crime seems to be that the Executor was following the instructions of the decedent in the Will, whose *in terrorem* clause specifically directs:

> Should any beneficiary, legatee or devisee under this Will become an adverse party in a proceeding for its probate or contest the validity of my Will, or any of the provisions set forth therein, either in a probate proceeding or any other judicial forum, then such beneficiary, legatee or devisee shall forfeit his or her entire interest hereunder, and such interest shall pass an become part of the residue of my estate.

ECF No. 21-1 at 9. It is difficult to understand how such conduct by the Executor – carrying out the directive of the decedent – can plausibly or in good faith be labeled as a <u>crime</u> committed not just by the Executor but also by the other Defendants. Further, to ascertain how conduct by the Executor that seems consistent with the decedent's intent morphs into a conspiracy by all Defendants to commit a serious crime, just these two new paragraphs will require all Defendants to fashion a response, potentially (indeed likely) a motion, and to seek critical discovery to learn what facts support such an extreme interpretation of the Executor's public filings in the Probate Court. Yet with the fact discovery period on the brink of closing, there is no time left to engage in such discovery without another protracted delay of this already much delayed case. Also concerning is that Plaintiff has known of this "new" claim for years, as she, her mother and sister have been litigating in the Probate Court and Superior Court the issues presented by the Executor's invocation of the Will's *in terrorem* clause.[3] <u>See, e.g.</u>, <u>Glassie v. Doucette</u>, 316 A.3d 1125, 1132-33 (R.I. 2024) (discussing Executor's assertion of *in terrorem* clause in 2012 and 2018). As with almost all of her "new" verbiage, Plaintiff fails

---

[3] Plaintiff's contention on Reply that she did not have a claim based on use of the *in terrorem* clause against her until April 2022 is not persuasive. ECF No. 97 at 11-12. That is, she concedes that she was aware of this claim since <u>April 2022</u>, yet she delayed until now to seek to assert it.

adequately to explain her delay in presenting this "new" claim reframing well-known-to-her conduct of the Executor as a crime committed by the three Defendants.

### III.    Conclusion

Based on the foregoing, I recommend that the Court deny Plaintiff's motion to amend (ECF No. 89) because she delayed past the Court's deadline in the pretrial order and well past the time when she knew of the factual underpinnings supporting each potential "new" fact/claim and has failed to sustain her burden of demonstrating good cause for doing so, as well as because Defendants have persuasively established that this delay will result in significant prejudice, including without limitation that the new facts/claims will require significant discovery and that some of them will require time consuming motion practice regarding whether they are futile or asserted in good faith.  Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 26, 2024